```
                                              FILED
                                         U.S. DISTRICT COURT
                                         EASTERN DISTRICT OF LA

                                         2006 FEB 17  PM 1:01

                                         LORETTA G. WHYTE
                                                CLERK
```

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONNA GOGREVE** | * | CIVIL ACTION NO. 05-2112 |
| | * | |
| **VERSUS** | * | SECTION " I " |
| | * | |
| **DOWNTOWN DEVELOPMENT DISTRICT** | * | MAGISTRATE " 4 " |
| **OF THE CITY OF NEW ORLEANS, THE** | * | |
| **CITY OF NEW ORLEANS, BOARD OF** | * | |
| **COMMISSIONERS FOR THE DOWNTOWN** | * | |
| **DEVELOPMENT DISTRICT, THE STATE** | * | |
| **OF LOUISIANA AND KURT WEIGLE** | * | |

* * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S FIRST SUPPLEMENTAL AND AMENDED COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Donna Gogreve, ("Ms. Gogreve") who hereby reiterates and adopts herein fully copied her original Complaint and Jury Demand except as amended below.

1.

To supplement and amend Plaintiff's original Complaint and Jury Demand by adding paragraphs beginning with number 68 below.

```
___ Fee____
_✓_ Process____
_X_ Dktd____
___ CtRmDep____
___ Doc. No ____
```

68.

Concerning paragraphs 4 - 6, Plaintiff alleges that there exists an integrated enterprise or joint employer relationship between the DDD, the City and the Board, both operationally and statutorily.

69.

Plaintiff alleges further that the above referenced integrated enterprise or joint employer relationship exists because there are: (1) an interrelation of operations between the DDD, the City and the Board; (2) centralized control of labor relations between the DDD, the City and the Board; (3) common management of labor relations; and, (4) upon information and belief, financial control between the entities.

70.

Plaintiff alleges further that the establishing legislation for the DDD via Acts 1974, No. 498, § 1, La. R.S. 33:2740.3 explains and defines the integrated enterprise as referenced above.

71.

In that regard, Section 2740.3A creates the DDD as a special taxing District and also grants "the power, control over, and responsibility for the District in the New Orleans City Council." This is clarified in La. R.S. 33:2740.3(b).

72.

La. R.S. 33:2740.3 also creates the Board, whose members are appointed by the Mayor of the City of New Orleans, with the approval of the New Orleans City Council as codified in La. R.S. 33:2740.3 ( c) (d).

73.

La. R.S. 33:2740.3(h) specifically provides that services within the DDD pursuant to any plan adopted "shall be furnished, supplied, and administered by the City of New Orleans through its regularly constituted departments, agencies, boards, commissions, and instrumentalities as appropriate."

74.

Additionally, Plaintiff alleges that the City of New Orleans through the Board provides that all capital improvements shall be acquired, constructed or provided by the City of New Orleans through its regularly constituted departments.

75.

Plaintiff alleges, that the DDD and the Board require approval of the Mayor and the City Council for all contractual relations, including, upon information and belief, employment relationships for positions such as her position as the Director of Finance and Administration.

76.

Accordingly, Plaintiff alleges that the DDD is not a municipal corporation by itself, but a branch of the City of New Orleans and through the New Orleans City Council.

77.

Accordingly, Plaintiff alleges that the DDD and the Board are integrated enterprises or joint employers with the City of New Orleans as an arm of the New Orleans City Council.

78.

Thus, Plaintiff asserts that the City, the DDD, the Board, and Mr. Weigle (in his individual capacity) are proper party Defendants herein. Plaintiff clarifies that the Board is being sued in its capacity as the Board and for the breach of fiduciary duties implicit in its acts and omissions indicated herein concerning her claims of retaliation and defamation. Mr. Weigle is a proper party Defendant individually for Plaintiff's defamation claims.

79.

Plaintiff alleges that her initial protected activity under Title VII of the Civil Rights Act occurred in the events described in Paragraph 15 herein. Plaintiff clarifies that during the December 8, 2003 grievance, many of the grievances were allowed on a one by one basis, addressed to the DDD Executive Committee.

80.

Plaintiff alleges that many of the grievances included allegations of race discrimination and/or gender discrimination.

81.

Plaintiff clarifies that she advised the Executive Committee that during her investigations of the grievances being presented (and in prior grievances against Defendant Weigle), Mr. Weigle had made statements and took actions that indicated a racist attitude, as more fully explained in Paragraph 15.

82.

Plaintiff also advised the Board that Mr. Weigle's statements were not only racist, but his actions appeared to violate prohibited discrimination regulation laws, including, but not limited to unfair employment action against employees because of race, unfair employment action against employees due to gender, and, importantly the tendency to retaliate against any employee who complained about any type of prohibited discrimination including race or gender discrimination.

83.

Plaintiff alleges that the above referenced findings and her presentation to the Executive Committee that: (1) Mr. Weigle did indeed, appear to have a racist attitude; and (2) he acted on the basis of race discrimination and gender discrimination was protected activity under Title VII of the Civil Rights Act as amended. Plaintiff alleges that the Board advised Mr. Weigle of her opposition to his prohibited discrimination and her participation in support of other employees who had alleged prohibited discrimination.

84.

Plaintiff alleges that from that point forward until ultimately her termination, which was communicated to her on August 12, 2004, Defendants embarked upon a concerted effort lead by Mr. Weigle, with, upon information and belief, the actual approval (or at least the tacit approval) of the Board to justify Plaintiff's termination in retaliation for her opposition to the referenced prohibited race discrimination and gender discrimination, and because of her participation in support of employees alleging prohibited discrimination during the investigation and grievance hearing.

85.

Plaintiff alleges that from December 8 onward, Defendants allowed (and encouraged) Mr. Weigle to paper Plaintiff's personnel file in a systematic way to discredit Plaintiff and to unfairly justify adverse treatment including her termination in retaliation for her opposition to and participation in race and gender discrimination complaints. For example, Plaintiff alleges that the allegations contained in Paragraph 16 through 20 constituted the beginning of Mr. Weigle's systematic plan to discredit her and paper her file with unfair and unjustified allegations of deficient performance.

86.

Plaintiff alleges that, on March 31, 2004 (and as referenced in Paragraph 21), her actions constituted protected activity again insofar as, at that time, Plaintiff's response to Mr. Weigle's unfounded papering of her personnel file as referenced included her complaint of prohibited hostile environment under Title VII of the Civil Rights Act as

amended.

87.

As referenced concerning Mr. Weigle's unwanted and unwelcome use of vulgar language, Plaintiff alleges that she held the reasonable beliefs that these instances of vulgar statements constituted a hostile environment in violation of Title VII of the Civil Rights Act as amended.

88.

Plaintiff's allegations in Paragraph 21 herein that Mr. Weigle took actions to discredit and undermine her authority were also protected activity as Plaintiff was complaining of prohibited retaliation arising from her initial opposition to race discrimination on December 8, 2003 and her participation in support of others alleging race discrimination and gender discrimination at that time.

89.

Plaintiff clarifies that her allegation in Paragraph 22 also contributed to Mr. Weigle's attempt (with the Board's approval or at least its acquiescence) to increase her stress knowing that she had a serious medical condition involving her heart. Plaintiff alleges that this activity was part of the concerted effort to undermine her on the job in retaliation for her protected activity.

90.

Plaintiff alleges that Paragraph 23 herein constitutes protected activity as she complained of the hostile environment, Mr. Weigle's retaliation and other disciplinary

actions taken against her including taking her duties and the use of vulgar language as all prohibited activity under Federal Discrimination law.

91.

Plaintiff alleges that this April 13, 2004 communication was protected activity.

92.

Plaintiff alleges that Board Member Robinson's response to her complaints of prohibited retaliation and hostile environment were not properly investigated and that Defendants failed to take proper and timely remedial measures, thereby creating direct liability upon Defendants.

93.

In that regard, Plaintiff asserts that many employees have made similar complaints against Mr. Weigle to no avail and the DDD, the Board and the City knew or should have known of these problems and failed to timely address these complaints.

94.

Accordingly, Plaintiff alleges that Defendants - the DDD, the Board and the City are directly liable as (1) she is protected from harassment due to gender or her sex; (2) that she was (and continues to be) subjected to unwelcome harassment based on gender and sex; (3) that the harassment was (and is) based on her gender and sex; (4) that the harassment has negatively affected the terms, conditions, or privileges of her employment; and (5) that Defendants knew, or should have known of the harassment and failed to take prompt and appropriate remedial action.

95.

Plaintiff clarifies that the allegations contained in Paragraph 25 through 29 constitute illegal activity under Louisiana Bidding Laws insofar as explained in the referenced allegations, Mr. Weigle attempted to circumvent said Louisiana law by placing the incorrect time on a bid that had been received after the deadline.

96.

Plaintiff alleges that her conduct as referenced in Paragraph 29 and 34 herein constitute protected activity under La. R.S. 23:967 insofar as Plaintiff's complaint to the Board on June 17, 2004 and her affidavit on July 13, 2004 were protected activity under La.R.S. 23:967(A)(1)(2)(3). Thereby creating Defendants' liability to Plaintiff under La. R.S. 23:967.

97.

Plaintiff alleges that the treatment concerning her request for medical leave was also part of Mr. Weigle's (with the approval and/or tacit approval of the Board) concerted effort to unfairly justify her termination and/or force her involuntary resignation. These allegations are referenced in Paragraph 38.

98.

Defendants' actions as reflected in Paragraphs 39 through 41 also constituted retaliation due to Plaintiff's protected activity, including her opposition to and participation in race discrimination complaints, gender discrimination complaints and her complaints constituted protected activity (as referenced) under Title VII and La. R.S. 23:967.

99.

Plaintiff alleges her treatment during her request for medical leave and her request for a grievance hearing are also related to retaliatory unfair treatment due to the protected activity described herein, up to, and including her ultimate termination. Plaintiff also contends that her treatment after her termination including Plaintiff's complaint in Paragraph 46 – that the DDD maliciously allowed to be published defamatory statements about Plaintiff and/or her job performance. Plaintiff also clarifies that Mr. Weigle is liable for his actions in defaming Plaintiff.

100.

Plaintiff clarifies that her allegation herein concerning defamation involves, the Board and Defendant-Weigle publishing defamatory statements against her.

101.

Plaintiff clarifies her claims of defamation that the DDD with the Board's approval (or tacit approval) and Defendant- Weigle (individually) accused her in her position as the Director of Finance and Administration of misappropriation of funds in the amount of three million ($3,000,000) dollars and additionally accused her of inappropriate worker's compensation reports.

102.

Plaintiff specifically alleges that these statements were included in the defamatory words stated against her by Defendants as indicated.

103.

Plaintiff alleges that Defendants stated these words in public hearings and recorded board meetings.

104.

Plaintiff alleges that Mr. Weigle in his individual capacity, the Board, the DDD and the City knew the statements were false and asserts that the Defendants acted with actual malice in making said statements.

105.

Accordingly, Plaintiff alleges that her business reputation has been irreparably harmed as a Financial Director by statements including, but not limited to, that she misappropriated over three million (3,000,000) dollars on financial statements.

106.

Plaintiff alleges that such statements in her capacity and under these circumstances are *per se* defamatory.

107.

Plaintiff clarifies her statement of damages stating the Defendants, the DDD, the Board, and the City's action are in violation of Title VII of the Civil Rights Act as amended, as their conduct, as described above, constituted prohibited retaliation due to her participation in support of race discrimination complaints and gender discrimination complaints and her opposition to race discrimination complaints as stated in more detail herein, and, as such, Defendants are jointly liable under Title VII of the Civil Rights Act onto

Plaintiff for:

    A.    Back-pay (including benefits);

    B.    Front-pay (including benefits as reinstatement is impractical);

    C.    Mental anguish and depression;

    D.    Humiliation/embarrassment;

    E.    Loss of enjoyment of life;

    F.    Medical expenses;

    G.    Prejudgment interest;

    H.    Punitive damages under Title VII of the Civil Rights Act;

    I.    Attorney's fees;

    J.    Costs of these proceedings; and

    K.    Injunctive relief enjoining and permanently restraining these violations of federal law.

108.

Plaintiff alleges that Defendants have more than five hundred (500) employees combined.

109.

Plaintiff specifically pleads her right to recover punitive damages from Defendants under Title VII of the Civil Rights Act, as Defendants' discriminatory actions were carried out with reprehensible malice and willful disregard of Plaintiff's federally protected rights.

110.

Plaintiff clarifies that her claim under La. R.S. 23:967, in the alternative, prohibiting reprisals against an employee who discloses or threatens to disclose a workplace violation of law, or provides information to a public body concerning any violation of law, and/or refuses to participate in a practice that is in violation of law, constitutes liability against Defendants including Mr. Weigle in his individual capacity for damages including compensatory damages, back pay, benefits, reinstatement, front pay (if reinstatement is impractical), reasonable attorney's fees and court costs plus judicial interest.

111.

Plaintiff alleges, upon information and belief, that at all material times herein, Defendants were covered under a policy of liability insurance in full force and effect issued by St. Paul's Insurance Company ("St. Paul's") and Travelers Insurance Company ("Travelers"), and Defendant XYZ Insurance Company, and that therefore, Defendants St. Paul's and Travelers (and XYZ Insurance Company), are properly partied Defendants herein under the Louisiana Direct Action Statute, La. R.S. 22:655.

112.

Plaintiff requests trial by jury.

WHEREFORE, Plaintiff, Donna Gogreve prays that Defendants, The Downtown Development District, the City of New Orleans, The Board of Commissions, Kirk Weigle (in his individual capacity), St. Paul's/Travelers Insurance Companies and XYZ Insurance Company be duly cited to appear and answer this Plaintiff's First Supplemental and

Amended Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of your Plaintiff, and against Defendants, jointly, severely and in solido as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the date of judicial demand, penalty wages, all costs of these proceedings, reasonable attorney's fees, including interest on attorney's fees, and any and all general and equitable relief deemed appropriate by this Honorable Court under the premises.

Respectfully submitted,

**JAMES L ARRUEBARRENA,
ATTORNEY AT LAW, LLC**

_____
James L. Arruebarrena (#22235)T.A.
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 581-7070
Facsimile (504) 581-7083

**ERIC J. O'BELL, L.L.C.**

Eric J. O'Bell (La. Bar No. 26693)
3500 North Hullen Street
Metairie, LA 70002
Telephone: (504) 456-8677
Facsimile: (504) 456-8624

**Attorneys for Donna Gogreve**

**Service via Summons**