UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **DONNA GOGREVE** | **CIVIL ACTION** |
| **versus** | **No. 05-2112** |
| **DOWNTOWN DEVELOPMENT DISTRICT, et al.** | **SECTION: I/4** |

### ORDER AND REASONS

Before the Court is a motion to dismiss filed by defendants Downtown Development District of New Orleans and the Board of Commissioners for the Downtown Development District pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

### *BACKGROUND*[2]

Plaintiff, a resident of Louisiana, was employed by the Downtown Development District ("DDD") as the Director of Finance and Administration; her duties included acting as finance director, human resources administrator, network administrator, office manager, and employee trainer.[3] The DDD was created by the state of Louisiana in 1975, as an agency of the city, in

---

[1]Defendants' motion states that it is also filed on behalf of a defendant insurance company variously described by plaintiff as St. Paul's Insurance Company, Travelers Insurance Company, and/or St. Paul Travelers. *See* Rec. Doc. No. 14, Defs.' Mot., p. 1. No summons was issued for any insurance company, and no such company has made an appearance at this time.

[2]These facts come primarily from the allegations in plaintiff's complaint. While these remain allegations, they are accepted as true for the purposes of this motion.

[3]Rec. Doc. No. 1, p. 3.

1

order to spur New Orleans' economic development. The DDD's Board of Commissioners ("the Board") is appointed by the mayor and the state senator and state representative for the city's downtown area.[4] The Executive Director of the DDD is defendant Kurt Weigle ("Weigle").

In her employment capacities, plaintiff was an alternate contact for employee grievances. She states that several staff members contacted her regarding the hostile work environment that Weigle had created at the DDD and requested a confidential hearing before the Board. On December 8, 2003, at plaintiff's request, a grievance hearing was held before the DDD's Executive Committee. At the hearing, plaintiff informed the committee of comments made by Weigle that were racially charged.[5] Plaintiff reports that Weigle learned of the hearing and attempted to discourage employees from attending.

Plaintiff alleges that on January 9, 2004, Weigle began to retaliate against her for her participation in the hearing. Plaintiff states that Weigle expected unreasonable performance by her, stopped communicating with her, and began delegating work to other parties in order to keep information from plaintiff. On January 15, 2004, plaintiff complained to Zennette Austin, the Board's vice chairperson and chair of the Board's Finance Committee. On March 29, 2004, Weigle placed plaintiff on probation. To justify this probation, Weigle cited a complaint by plaintiff that he had overburdened her with work and plaintiff's complaints regarding understaffing at the DDD.[6] Plaintiff alleges that Weigle took her legitimate complaints and mischaracterized them as inappropriate acts worthy of probation.

---

[4]*See* http://www.neworleansdowntown.com/site119.php (last visited Mar. 17, 2006).

[5]Rec. Doc. No. 1, pp. 3-4.

[6]Rec. Doc. No. 1, p. 6.

Plaintiff suffers from a medical condition, cardiomyopathy, that she says was aggravated during her employment by the physical and emotional stress that resulted from Weigle's behavior. Eventually, plaintiff was granted a medical leave of absence beginning June 29, 2004, based on the recommendation of her doctor.[7] The next day, the Board requested a more definite statement from her doctor and authorization to review her medical records. Plaintiff alleges that these requests were not made of other employees in similar situations.

On August 12, 2004, Weigle terminated plaintiff. On August 19, 2004, she requested a grievance hearing that was refused by the new Board chairperson, Elaine Coleman. In a letter dated August 26, 2004, Coleman wrote that the Board had already considered two previous grievance hearings by plaintiff and, further, that she was not entitled to a hearing to dispute her termination.[8] On September 20, 2004, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On March 7, 2005, the EEOC mailed plaintiff a right to sue letter.[9]

Plaintiff filed her complaint against the DDD, the Board, the City of New Orleans ("City"), and Weigle, on June 6, 2005, alleging race, gender, and age discrimination pursuant to both federal and state law.[10] In addition, she complained that she had been terminated in

---

[7]Rec. Doc. No. 1, p. 10.

[8]Rec. Doc. No. 1, pp. 11-12.

[9]Rec. Doc. No. 1, pp. 13-14.

[10]The Court is aware that there is a pending state court action in which plaintiff has levied similar claims to the ones presented here. Neither party has argued that this Court should abstain from exercising jurisdiction in this case. "[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483, 498 (1976) (internal quotation omitted). Only "extraordinary and narrow"

3

retaliation for her allegations against Weigle, that Weigle had created a hostile work environment, and that defendants' conduct constituted an intentional infliction of emotional distress. She added other allegations of federal and state law violations, including a charge of defamation.[11] Defendants filed the instant motion on August 15, 2005.[12]

*LAW AND ANALYSIS*

**I.     Standards of Law**

*A. Motion to Dismiss for Failure to State a Claim*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a defense where a party has failed to state a claim upon which relief can be granted. A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d

---

circumstances justify a district court's abstention in this situation. *Id.* at 813, 96 S. Ct. at 1244, 47 L. Ed. 2d at 495-96.

[11] Rec. Doc. No. 1, pp. 14-18.

[12] Defendants attempt to adopt and incorporate arguments made in their answer to plaintiff's state court petition. At 22 pages, defendants' brief is already nearing the page limit for briefs filed in this district. *See* Loc. R. 7.8.1. Allowing defendants to incorporate their lengthy state court arguments would permit them to side-step this page limit. *See also Prescott v. Northlake Christian Sch.,* 141 Fed. Appx. 263, 275 (5th Cir. 2005) (requiring an appellant to "include the substance of its arguments in the body of its brief"); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993) (noting that, by allowing a party to incorporate arguments made in prior pleadings, its brief would exceed the page limit). Therefore, the Court will only address the arguments and issues presented in defendants' brief.

190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,* 197 F.3d at 774; *Lowry v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

"However, 'in order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted).

B. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant*

*County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Where, as here, the defendant has attacked the court's subject matter jurisdiction, the plaintiff has the burden of "proving by a preponderance of the evidence that the trial court does" possess the requisite jurisdiction. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

## II. Voluntarily Dismissed Claims

Plaintiff consents to the dismissal of some of her claims.[13] Accordingly, plaintiff's claims for age, gender, and disability discrimination pursuant to federal and Louisiana law are dismissed. Plaintiff's claims relating to defendants' intentional infliction of emotional distress are also dismissed.

## III. Claims Pursuant to the Louisiana Code of Governmental Ethics

Defendants first argue that this Court does not have jurisdiction over plaintiff's claims pursuant to the Louisiana Code of Governmental Ethics ("Code of Ethics"), La. Rev. Stat. 42:1101 *et seq.*[14] Defendants correctly contend that the Code of Ethics does not provide plaintiff with a private right of action. *See Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 790 So. 2d 725, 732 (La. Ct. App. 5th 2001) ("Jurisdiction to enforce the Code of Governmental Ethics lies in the Board of Ethics. . . . We find no provision for any private right of action under the Code of Governmental Ethics . . . ."); *see also Wells v. City of Alexandria*, No. 03-30750, 2004 U.S. App. LEXIS 8525, at *5-6 (5th Cir. Apr. 29, 2004) (finding no private cause of action for governmental employees and citing *Nolan*). Plaintiff offers no opposition to this argument in her

---

[13]Rec. Doc. No. 37, p. 10.

[14]Rec. Doc. No. 14, pp. 9-12.

response to defendants' motion.  Therefore, plaintiff's claims alleging violations of the Code of Ethics will be dismissed.

## IV.  Plaintiff's Claims Against the Board

Defendants argue that plaintiff's Title VII claims against the Board should be dismissed.[15]  Defendants include a number of helpful citations which make clear that a plaintiff cannot recover against public employees in their individual capacities.  *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) (citing *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990)).  Plaintiff does not contest this proposition,[16] and it does not appear to the Court that she has sued any Board members in their individual capacities.  Instead, plaintiff seems to be stating claims against the Board as a separate entity.  To the extent that plaintiff is claiming otherwise, any such claims against the Board members in their individual capacities will be dismissed.

Defendants also contend that plaintiff's claims should fail because the Board is not her employer.  Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  42 U.S.C. § 2000e(b).  A person is defined as "individuals, governments, governmental agencies, [and] political subdivisions," *inter alia*.  *Id.*  Defendants correctly note that individuals who are not employers cannot be sued pursuant to Title VII.  *See, e.g.*, *Grant*, 21 F.3d at 653 ("[T]itle VII does not permit the imposition of liability upon individuals unless they meet title VII's definition of 'employer.'").

---

[15]Rec. Doc. No. 14, p. 12.

[16]Rec. Doc. No. 37, p. 4.

In response, plaintiff argues that the Board is a "joint employer"[17] of plaintiff, along with the DDD and the City.[18] Plaintiff cites the Fifth Circuit's explanation in *Trevino v. Celanese Corp.*, 701 F.2d 403-04 (5th Cir. 1983), that:

> the rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

The "joint employer" test laid out in *Trevino* is not appropriate to analyze the relationship between the Board, the DDD, and the City. As the *Trevino* court stated, this "standard is not readily applicable to governmental subdivisions, for it was developed by the National Labor Relations Board to determine whether consolidation of separate *private* corporations is proper in determining the relevant employer for purposes of enforcing the National Labor Relations Act." 701 F.2d at 404 n.10 (internal quotation and citation omitted). *See also Owens v. Rush*, 636 F.2d 283, 286 n.2 (10th Cir. 1980) (finding no need to apply the "consolidation doctrine" where defendants had a relationship "more analogous to a department and the corporation it operates within than to separate corporate entities"); *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 980 n.9 (5th Cir. 1980) (declining to apply the "joint employer" standard as to municipal, county, and state defendants).

As a governmental subdivision, the Board cannot be consolidated with the DDD and the City as a joint employer. These entities do not relate in a manner similar to the private

---

[17]Courts have also described this "joint employer" standard as the "consolidation doctrine" and the "integrated enterprise standard." The Court can find no evidence of any distinction between the terms.

[18]Rec. Doc. No. 37, pp. 3-5.

corporations to which the "joint employer" standard was originally meant to apply.  Plaintiff makes no allegation that the Board hired her or was her direct employer.  Indeed, it is not clear to the Court from any of the filings which party actually employed plaintiff.  For the purposes of this motion, however, the Court finds it clear that the Board will not be liable for plaintiff's Title VII claims.

Defendants also state that plaintiff's claims against the Board pursuant to Louisiana anti-discrimination law, La. Rev. Stat. § 23:967, should be dismissed for the same reasons.[19]  "While the Louisiana Supreme Court has not spoken directly on whether [the Title VII] framework applies to § 23:967 cases, Louisiana courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes." *Smith v. AT&T Solutions, Inc.*, 90 Fed. Appx. 718, 723 (5th Cir. 2004); see also *Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *Moody v. Weatherford U.S., Ltd. P'ship*, 821 So. 2d 780, 783 (La. Ct. App. 2d 2002) ("Because the Louisiana and federal anti-discrimination statutes are similar in scope, courts may consider federal jurisprudence when construing state law.").  Plaintiff does not offer any specific fact or argument to suggest that the above reasoning should not apply to her claim against the Board pursuant to § 23:967.  As a result, the Court finds no reason why her state law discrimination claim should not be dismissed against the Board as well.

## V.  Retaliation Claim Pursuant to Title VII

Defendants argue that plaintiff has failed to state a claim for retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII").[20]  42 U.S.C. § 2000e-3(a) provides:

---

[19]Rec. Doc. No. 14, p. 13.

[20]Rec. Doc. No. 14, pp. 18-19.

>It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

A retaliation claim requires a plaintiff to first make a prima facie showing that: 1) she engaged in a statutorily protected activity or expression; 2) an adverse employment action occurred; and 3) a causal link between the protected activity or expression and the adverse employment action exists.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citations omitted); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001) (stating "[r]etaliation claims are nothing more than a protection against discrimination in that the employee against whom the employer has retaliated suffers discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity"); *see also Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. 1982). Having established a prima facie case, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the employment action.  *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  If the defendant satisfies this burden, the plaintiff must then prove that the employer's proffered non-discriminatory purpose for the action is merely pretextual.  *Id.*

The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a but-for cause of the termination. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985). The causal connection standard of a prima facie retaliation case, however, is much less stringent than the ultimate but-for cause determination in such a case. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  With respect to plaintiff's prima facie case, plaintiff need not prove that retaliation was the sole factor motivating the termination

decision. *Id.*

Plaintiff alleges that she was terminated in retaliation for reporting the discriminatory comments and actions of Weigle.[21] Taking plaintiff's allegations as true for the purposes of this motion, the Court finds that plaintiff's complaint states a prima facie claim for retaliation pursuant to Title VII. *See Gaspard v. J & H Marsh & McLennan of La., Inc.*, 105 F. Supp. 2d 537, 544 (E.D. La. 2000) ("Clearly, reporting sexual harassment is a protected activity found under Title VII."); *see also Martorell v. Galveston County*, 103 Fed. Appx. 538, 540 (5th Cir. 2004); *Cristia v. Sys. Eng'g & Sec., Inc.*, No. 03-2138, 2004 U.S. LEXIS 15970, at *28-31 (E.D. La. Aug. 12, 2004) (Vance, J.) (finding a plaintiff who was terminated after complaining that she was sexually harassed by her supervisor had stated a prima facie case for Title VII retaliation); *Fishel v. Farley*, No. 93-480, 1994 U.S. Dist. LEXIS 268, at *18 (E.D. La. Jan. 7, 1994) ("Speaking out about sexual harassment in the public work place, as occurred in the instant case, is protected activity.") (footnote omitted).

Defendants cite two cases in support of their contention that plaintiff's status as an agent of her employer bars her Title VII retaliation claim; however, neither citation is persuasive. In *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir. 1998), the Fifth Circuit considered a Title VII lawsuit brought by the plaintiff, an in-house attorney for the defendant. In that case, in an attempt to oppose the allegedly discriminatory acts of her employer, the plaintiff disclosed certain confidential information. *Id.* at 371. Weighing the plaintiff's right to oppose allegedly discriminatory acts against her employer's right to ethical representation and the legal profession's interest in assuring the ethical behavior of lawyers, the

---

[21]*See, e.g.*, Rec. Doc. No. 40, p. 6 ¶ 85.

court held that conduct which breaches an attorney's ethical duties is unprotected by Title VII. *Id.* at 376.  The court noted that "there may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed." *Id.* at 374.  Where there is such interference, the employee's conduct is not protected by Title VII. *Id.*  Contrary to defendant's citation, the court's ruling in *Douglas* did not rest on the plaintiff's mere status as an agent of her employer.  Defendants do not detail whether plaintiff's actions in opposition to the alleged discriminatory acts rose to such a level of interference such that she should be denied Title VII protection.  Regardless, this factual inquiry would not be appropriate for the instant motion.

       Equally as unhelpful is defendants' reference to *Twisdale v. Snow*, 325 F.3d 950 (7th Cir. 2003).  In *Twisdale*, a white employee brought a Title VII retaliation claim, arguing that he had been retaliated against by his black supervisors when he opposed the discrimination claims levied by another black employee. *Id.*  The district court granted summary judgment for the defendant, and the Seventh Circuit affirmed, finding that Title VII did not protect "employees whose resistance to charges of discrimination made by their coworkers provokes the employer's ire." *Id.* at 952.  Again, there was no intimation by the court that the plaintiff's status as an agent of his  employer would pretermit Title VII protection.  Defendants' citation to *Douglas* and *Twisdale* is, therefore, unpersuasive.

## VI.  Retaliation Claim Pursuant to Louisiana Law

       Defendants also argue that plaintiff fails to state a retaliation claim pursuant to Louisiana

law.[22]  La. Rev. Stat. § 23:967 provides that

> [a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

Defendants argue that plaintiff has not charged a violation of state law, which is required for her claim.  *See Puig v. Greater New Orleans Expressway Comm'n*, 772 So. 2d 842, 845 (La. Ct. App. 5th 2000) (finding the statute "specifies that the employer must have committed a 'violation of state law' for an employee to be protected from reprisal").

Plaintiff's complaint includes one particular incident in which plaintiff alleges that, while accepting proposals for a particular human resources project, Weigle improperly accepted a proposal that was submitted after the deadline and forced another employee to mark it as having been timely received.  Plaintiff makes a vague allegation in her amended complaint that Weigle's actions violated state bidding laws.[23]  The Court accepts this allegation as sufficient to state a claim pursuant to § 23:967.  *But see Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. Ct. App. 4th 2004) (finding plaintiff's vague allegations of state law violations insufficient to defeat defendant's motion for summary judgment).

## VII. Defamation Claim

Defendants argue that plaintiff has not made allegations sufficient to meet the

---

[22] Rec. Doc. No. 14, 19.

[23] Rec. Doc. No. 40, p. 9 ¶ 95.

requirements for bringing a defamation claim pursuant to Louisiana law. Specifically, defendants argue that, as a public figure, plaintiff's defamation claim requires her to prove that the defamatory statements were made with the knowledge that they were false or with reckless disregard for their veracity.[24]

In Louisiana, a defamation claim requires a plaintiff to prove: "(1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Darden v. Smith*, 879 So. 2d 390, 397 (La. Ct. App. 3d 2004) (quoting *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997)). The Louisiana Supreme Court has also stated that

> a plaintiff who is a public official must establish by clear and convincing evidence that the defamatory statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not. . . . At the very least, the public official plaintiff must prove that the defendant published the false statement with a high degree of awareness of its probable falsity. . . . [o]r [that] . . . the defendant in fact entertained serious doubts as to the truth of the publication.

*Davis v. Borskey*, 660 So. 2d 17, 23 (La. 1995) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686, 706 (1964)) (internal quotations and citations omitted).

Citing the United States Supreme Court, the *Davis* court described a public official as an employee who has or appears to have "substantial responsibility for or control over the conduct of governmental affairs." *Id.* at 21. A public official "holds a governmental position that invites public scrutiny and discussion and 'has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it.'" *Id.*

---

[24]Rec. Doc. No. 14, p. 20.

(quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966)).  In *Davis*, the court found that the plaintiff's duties as a purchasing agent for a state university, requiring him to handle funds and negotiate financial transactions, constituted the "substantial responsibility" of a public official.  *Id.*

Plaintiff's amended complaint alleges that she was accused of misappropriating funds and of "inappropriate worker's compensation reports."[25]  She claims that these statements were made and recorded during board meetings, and she alleges that these statements irreparably injured her reputation.  Accepting these facts as true for the purposes of the instant motion, the Court finds that plaintiff has plead the requisite elements of defamation, contrary to defendants' arguments.

Plaintiff also alleges that defendants knew that these statements were false and, therefore, acted with actual malice.[26]  While the Court is mindful of the heavy factual burden that plaintiff must carry to prove defendants' knowledge of these falsities or actual malice, plaintiff's allegations are accepted as true.  Even applying the more stringent *New York Times* standard, the Court finds that plaintiff has alleged a defamation claim as a public official.[27]

## VIII.  Claim Asserting Solidary Liability

Defendants argue that plaintiff's claim for solidary liability should be dismissed.[28]

---

[25] Rec. Doc. No. 40, p. 10 ¶ 101.

[26] Rec. Doc. No. 40, p. 11 ¶ 104.

[27] For the purpose of deciding this issue, the Court has assumed plaintiff to be a "public official" who must satisfy the more stringent *New York Times* standard as there is no argument to the contrary.

[28] Rec. Doc. No. 14, p. 21.

15

Defendants note that the 1996 amendments to La. Civ. Code art. 2324 eliminated solidary liability for negligent joint tortfeasors. *See Dumas v. State*, 828 So. 2d 530, 537 (La. 2002) (holding that "[t]his provision abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault") (footnote omitted). Plaintiff has presented the Court with no opposition to defendants' argument. Further, the Court is unclear which parties plaintiff is claiming are liable *in solido* and to which claims this solidary liability may apply. Therefore, to the extent that plaintiff's complaint and amended complaint include solidary liability claims for non-intentional tortfeasors, plaintiff's claims are dismissed.

### IX. Claim for Payment Pursuant to La. Rev. Stat. § 23:631

Defendants attempt to raise a question of law regarding plaintiff's claim for payment due for the vacation time she accumulated prior to her termination.[29] La. Rev. Stat. 23:631 is "designed to compel prompt payment of wages when an employee is discharged or resigns." *Wyatt v. Avoyelles Parish Sch. Bd.*, 831 So. 2d 906, 912 (La. 2002) (citation omitted). Subsection (D) provides that

> (1) . . . vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
> (a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
> (b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
> (2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.

Defendants argue that plaintiff has not specifically alleged that "she is deemed eligible for and

---

[29]Rec. Doc. No. 14, p. 21.

has accrued the right to take vacation time with pay and that as of the date of her termination, that she was not compensated for the vacation time."[30]  Taking the facts in the light most favorable to the plaintiff and considering that the complaint need only "contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial," *Campbell*, 43 F.3d at 975 (internal quotation and citation omitted), the Court agrees with plaintiff that her allegations sufficiently state that defendants failed to pay her for vacation time she was rightfully due.[31]  Therefore, plaintiff's claim pursuant to § 23:631 may remain.

Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** in accordance with this order.

New Orleans, Louisiana, March   30th  , 2006.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[30]Rec. Doc. No. 14, p. 21.

[31]*See* Rec. Doc. No. 1, p. 13 ¶ 43 ("[A] certified letter was sent to the DDD through its counsel notifying the DDD that it violated La. R.S. 23:631 for failure to pay in full all hours due Complainant under her annual leave totaling 364.82 hours.").